# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

COLETTE LEE-LEWIS, M.D., et al.,

    Plaintiffs,

    v.

JOHN KERRY, United States Secretary of State, et al.,

    Defendants.

2:13-CV-80

## ORDER

Plaintiffs Collette Lee-Lewis, M.D., and her husband, Selvin Charles Lewis, bring suit against multiple United States government officials and agencies relating to her J-1 visa waiver application. Plaintiffs seek declaratory judgments regarding Defendants' alleged violations of: (1) the Administrative Procedure Act ("APA"); (2) the Freedom of Information Act ("FOIA"); (3) due process; (4) the International Covenant on Civil and Political Rights ("ICCPR"); and (5) customary international law. Dkt. No. 28 ("2d Am. Compl.") ¶¶ 117-177. Plaintiffs also seek redress under FOIA. Id. ¶¶ 178-183, p. 39 ¶¶ 26-27.

Defendants John Kerry, Rajiv Shah, Linda Walker, Marcia Pryce, Daniel Renaud, United States, Eric Holder, Jeh Johnson, and Leon Rodriguez ("Defendants") argue that this Court lacks subject matter jurisdiction because: (1) the claims are moot; (2) the challenged actions are exempt from judicial review; (3) Plaintiff failed to state a claim; and (4) the FOIA request was not properly perfected. Dkt. No. 32 ("Def. Mot.") at 5-28.

Presently before the Court are Defendants' Motion to Dismiss (Dkt. No. 32) and Plaintiffs' Motion to Strike (Dkt. No. 40). Although the Court empathizes with Plaintiffs, it cannot grant most of the relief they seek. However, it does appear to have subject matter jurisdiction over Plaintiffs' FOIA claims.

Thus, for the reasons below, Defendants' Motion to Dismiss (Dkt. No. 32) is **GRANTED IN PART** and Plaintiffs' Motion to Strike (Dkt. No. 40) is **DENIED IN PART**.

### FACTUAL BACKGROUND

The Court begins by briefly summarizing the relevant provisions of the J-1 visa and its accompanying waiver process, along with the circumstances surrounding the Caribbean island of Montserrat, a British Overseas Territory.

**The J-1 Visa and No Objection Waiver**

The United States awards visas each year to "an alien having a residence in a foreign country which he has no intention of abandoning who is a bona fide student, scholar,

trainee, teacher, professor, research assistant, specialist, or leader in a field of specialized knowledge or skill." 8 U.S.C. § 1101(a)(15)(J) ("J-1 visa"). The J-1 visa grants its holders temporary status in the United States "for the purpose of teaching, instructing or lecturing, studying, observing, conducting research, consulting, demonstrating special skills or receiving training." Id.

No J-1 holder "shall be eligible to apply for an immigrant visa, or for permanent residence, or for a non-immigrant visa" without residing and being physically present in her home country for at least two years after leaving the United States. 8 U.S.C. § 1182(e). Plaintiff Lee-Lewis is subject to this requirement because the United States Agency for International Development ("USAID") sponsored her visa. 2d Am. Compl. ¶ 23.

The residency requirement "may" be waived in three cases: (1) "exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien)"; (2) "the alien cannot return to the [required] country . . . because [s]he would be subject to persecution on account of race, religion or political opinion"; and (3) "the foreign country of the alien's nationality or last residence has furnished . . . a statement in writing that it has no objection to such waiver in the case of such alien." Id.

AO 72A
(Rev. 8/82)

Plaintiff Lee-Lewis seeks the third type of waiver, having received a no objection statement from the Montserratian government. Id. ¶ 47. This is only one component of a no objection waiver application: The State Department can "request the views of each of the exchange visitor's sponsors," and its Waiver Review Division ("WRD") "shall review the program, policy, and foreign relations aspects of the case." 22 C.F.R. § 41.63(d)(1)-(2). WRD's recommendation is ordinarily adopted as the State Department's. Id. § 41.63(d)(2).

## Volcanic Activity on Montserrat

In 1995, the Soufriere Hills volcano of southern Montserrat erupted, completely destroying the island's capital, its airport, and most of its fertile soil, and covering much of the island in volcanic ash. Id. ¶ 15. The volcano may destroy Montserrat—it has continued to erupt and could annihilate the island completely at any time. Id. ¶ 54. The State Department and the United States Citizenship and Immigration Service ("USCIS") recognize that "returning residents possibly would be subject to contracting the lung disease silicosis and other health risks caused by ash that periodically covers much of the island." Id. ¶ 15.

## Plaintiff Lee-Lewis's Visa History

Plaintiff Lee-Lewis is a medical doctor who now lives with her husband in Glynn County, Georgia; she was born in Plymouth,

AO 72A
(Rev. 8/82)

Montserrat's longtime capital. Id. ¶¶ 1, 15. Both spouses are Montserrat citizens. Id. ¶ 2. On August 12, 1989, Plaintiff Lee-Lewis entered the United States on a J-1 visa sponsored by USAID, to pursue a biochemistry bachelor's degree. Id. ¶ 22. She remained in this country until October 26, 1992. Id. ¶ 24. She returned to Montserrat. Id. ¶ 25. She diligently searched for work, but found none. Id. She returned to the United States in December 1992 for medical school interviews. Id.

Before she did so, Montserrat's Ministry of Education informed her "that she was released from her two-year foreign residence requirement because she could not find a job." Id. It provided Plaintiff Lee-Lewis with a letter explaining "that she had applied for a job, but there were none available." Id. This caused Plaintiff Lee-Lewis to "sincerely believe" that she was released from the J-1 visa residency requirement. Id.

She returned to the United States on a B-1/B-2 tourist visa, then changed to an F-1 student visa upon matriculating to medical school. Id. ¶ 26. After graduating, she maintained H-1B status from May 8, 1998 to July 7, 2005. Id. ¶ 27.

Believing that she was free of J-1 issues, and advised by an attorney, Plaintiff Lee-Lewis applied for and received an I-140 National Interest Waiver in May 2005. Id. ¶¶ 34-35.

Shortly thereafter, the attorney asked Plaintiff Lee-Lewis whether she had ever obtained a J-1 residency requirement

AO 72A
(Rev. 8/82)

waiver, to which Plaintiff responded "that she did not have one, nor did she think she needed one." Id. ¶ 35. The attorney then "sent her a letter on June 2, 2005 . . . notifying her that she was ineligible to apply for adjustment of status until she fulfilled her two-year foreign residence requirement." Id.

**Plaintiff Lee-Lewis's J-1 Waiver Application**

Plaintiff Lee-Lewis submitted her no objection waiver application on October 27, 2006. Id. ¶ 53. It referenced the ongoing volcanic eruptions on Montserrat. Id. ¶ 54.

The State Department issued a "Not Favorable Recommendation," and the USCIS denied the application on October 2, 2008. Id. ¶¶ 80, 92. The denial read:

> The United States Department of State has advised that even though a "no objection" statement from your country of nationality has been issued, based on program and policy considerations they are not recommending that you be granted a waiver of the two-year foreign residence requirement of section 212(e) of the Immigration and Nationality Act, as amended. . . . Accordingly, on the basis of the unfavorable recommendation of the USDOS, you are hereby denied a waiver of the two-year foreign residence requirement of section 212(e). No appeal lies from this decision . . . .

Id. ¶ 93.

After this lawsuit began, the State Department reopened the case and issued a "Favorable Recommendation," which was followed

AO 72A
(Rev. 8/82)

by an USCIS approval notice granting Plaintiff Lee-Lewis a waiver on August 7, 2013. <u>Id.</u> at ¶¶ 99-100.

**Plaintiff Lee-Lewis's FOIA Request**

On May 8, 2013, Plaintiff Lee-Lewis filed a State Department FOIA request seeking information about the denial of her application. <u>Id.</u> ¶ 38. Plaintiff Lee-Lewis sought information as to whether the WRD "engaged in a pattern and practice of not adhering to its own regulations, the Constitution, and [whether it] commit[ed] other legal violations in adjudicating no objection waiver applications that involve U.S. Government funding." <u>Id.</u> ¶ 82.

On May 22, 2013, the State Department acknowledged receipt of the request and issued a case number. <u>Id.</u> ¶ 112. To date, the State Department has failed to confirm or deny the existence of responsive documents. <u>Id.</u> ¶¶ 113-115.

### PROCEDURAL BACKGROUND

On June 17, 2013, Plaintiffs filed suit against Defendants, seeking declaratory, injunctive, mandamus, and FOIA relief. Dkt. No. 1. Plaintiffs filed a Second Amended Complaint on August 20, 2014. Dkt. No. 28.

Defendants filed a Motion to Dismiss (Dkt. No. 32), Plaintiffs responded (Dkt. No. 36), Defendants replied (Dkt. No. 37), and Plaintiffs filed a surreply (Dkt. No. 42). Plaintiffs

moved to strike Defendants' reply (Dkt. No. 40); Defendants responded (Dkt. No. 41).

Now pending before the Court are Defendants' Motion to Dismiss (Dkt. No. 32), which is **GRANTED IN PART**, and Plaintiffs' Motion to Strike (Dkt. No. 40), which **is DENIED IN PART**.

## LEGAL STANDARD

Defendants move to dismiss this action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A 12(b)(1) motion can challenge subject matter jurisdiction facially or factually. McElmurray v. Consol. Gov't of Augusta-Richmond Cty., 501 F.3d 1244, 1251 (11th Cir. 2007). In a facial challenge, the court only considers the pleadings, so "the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981). The complaint's allegations are taken as true, and the court determines whether the complaint sufficiently alleges a basis for jurisdiction. Scarfo v. Ginsburg, 175 F.3d 957, 960 (11th Cir. 1999) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)). The complaint may be dismissed only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Jackson v. Okaloosa Cty., 21 F.3d 1531, 1534 (11th Cir. 1994) (citation omitted).

AO 72A
(Rev. 8/82)

In a factual challenge, a court "is free to weigh the evidence." See Lawrence, 919 F.2d at 1528-29 (quoting Williamson, 645 F.2d at 412); Scarfo, 175 F.3d at 960 ("[M]atters outside the pleadings, such as testimony and affidavits, are considered."). The presumption of truthfulness does not attach. See Scarfo, 175 F.3d at 960.[1]

## DISCUSSION

### I. Motion to Strike

Plaintiffs have moved to strike Defendants' reply briefs, or for leave to file a surreply. Dkt. No. 40.[2] They argue that Defendants failed to notify the Clerk of Court of their intention to file a reply, contrary to Local Rule 7.6.

"[P]arties may file as many reply briefs as they like . . . [and] failure to satisfy the notice and timing provisions of Local Rule 7.6 cannot be used by an opposing party as a sword to have a brief stricken." Brown v. Chertoff, No. 406-cv-002, 2008 WL 5190638, at *2 (S.D. Ga. Dec. 10, 2008) (citing Podger v.

---

[1] Plaintiffs contend that this motion should be converted to one for summary judgment because Defendants relied on evidence other than the pleadings. Pl.'s Opp. at 1-5. The doctrine of incorporation by reference allows reliance on documents that are "(1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). "[A] document need not be physically attached to a pleading. . . ." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). An "undisputed" document is one whose authenticity is not challenged. Horsley, 304 F.3d at 1134.

Defendants used Dkt. No. 27-1, Exs. 4, 5, and 7 and Opp'n Mot. for Pl.'s to Am. and Supplement the Pleading at 14. Id. at 2-3. These documents regard Plaintiff's FOIA request. Plaintiff herself relies on several of them in her Complaint. See 2d Am. Compl., ¶¶ 108, 112-114. There is no dispute regarding the authenticity of any of them. Conversion is thus DENIED.

[2] Plaintiffs also request oral arguments on this Motion. Pl.'s Opp. at 1. This is unnecessary. The request is hereby DENIED.

Gulfstream Aerospace Corp., 212 F.R.D. 609, 610 (S.D. Ga. 2003)). Plaintiffs' Motion (Dkt. No. 40) is thus **DENIED IN PART.** See Podger, 212 F.R.D. at 610. However, Plaintiffs' Motion for Leave to File a Surreply (Dkt. No. 40) is **GRANTED.**

## II. The Court Lacks Subject Matter Jurisdiction to Review Most of Plaintiffs' Claims

Defendants argue that the Court lacks subject matter jurisdiction because: (1) Plaintiffs' claims are moot; (2) the waiver denial is not subject to judicial review; (3) Plaintiffs failed to state a claim; and (4) Plaintiffs failed to exhaust their FOIA administrative remedies. Dkt. No. 32 ("Def.'s Mot.") at 5-28. The first three arguments are at least partly valid; the last is not. Plaintiffs' international law, ICCPR, and FOIA claims survive, but their other claims do not.

### a. Many of Plaintiffs' Claims are Moot

Much of the redress Plaintiffs seek concerns the initial denial of Plaintiff Lee-Lewis's waiver application. 2d Am. Compl. ¶¶ 118-19, 121-23, 126, 129-33, 137, 140-41, 143-44, 150-51, 156-58, 161, 164, 166, 172, 177; id. at 35 ¶ 2, 36 ¶¶ 3, 5-6, 37 ¶¶ 8-9, 13, 38 ¶¶ 16, 20, 23. These claims are moot.[3]

---

[3] Plaintiffs argue that Defendants failed to respond to these claims. Defendants adequately addressed most of them. See Def.'s Mot. at 10-12 (discussing 2d Am. Compl., ¶¶ 124-128, 150-153); Id. at 20-22 (discussing 2d Am. Compl. ¶¶ 129-130); Id. at 10-12 (discussing 2d Am. Compl. ¶¶ 124-128); Id. at 8-12 (discussing 2d Am. Compl. ¶¶ 131-133); Id. at 22-28 (discussing 2d Am. Compl. ¶¶ 141-145); Id. at 12-15 (discussing 2d Am. Compl. ¶¶ 146-149). But they did not address customary international law and the ICCPR. See Def.'s Mot. at 1-28. Their reply briefly noted those claims, and they requested time to file a responsive pleading addressing any arguments that

Federal courts must "examine _sua_ _sponte_ their jurisdiction." Kelly v. Harris, 331 F.3d 817, 819 (11th Cir. 2003). Jurisdiction is proper under Article III of the U.S. Constitution only where there is a "Case" or "Controversy."

A court can always test mootness. Bankwest, Inc. v. Baker, 446 F.3d 1358, 1363 (11th Cir. 2006). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," or when the court cannot "give meaningful relief." Powell v. McCormack, 395 U.S. 486, 496 (1969); Ethredge v. Hail, 996 F.2d 1173, 1175 (11th Cir. 1993). A moot claim "must be dismissed." Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1217 (11th Cir. 2000) (citing Pacific Ins. Co. v. Gen. Dev. Corp., 28 F.3d 1093, 1096 (11th Cir. 1994)).

Mootness applies to claims for declaratory relief. 28 U.S.C. § 2201(a); Burke v. Barnes, 479 U.S. 361, 364 (1987); Nat'l Solid Wastes Mgmt. Ass'n v. Ala. Dep't of Envtl. Mgmt., 924 F.2d 1001, 1003 (11th Cir. 1991). A request for declaratory judgment is moot if the challenged action has no continuing adverse effects on the parties. Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122 (1974).

---

were lacking. See Dkt. No. 38 at 6 n.3, 7 n.4. The Court **GRANTS** this request. Defendants have **sixty days** from the issuance of this Order to amend their Motion to Dismiss to address Counts 6-7. Dismissal as to these Counts is **DENIED**.

AO 72A
(Rev. 8/82)

Plaintiffs ask the Court to declare deficiencies in the initial denial of Plaintiff Lee-Lewis's waiver application. 2d Am. Compl. ¶¶ 125, 145. But USCIS reversed this denial. Id. ¶ 100. The State Department then issued a "Favorable Recommendation." Id. ¶ 99. Plaintiffs' claim is thus moot. 2d Am. Compl. ¶¶ 99-100; cf. Bankwest, Inc., 446 F.3d at 1364; Fla. Ass'n of Rehab. Facilities, Inc., 225 F.3d at 1217.

Plaintiffs argue that voluntary cessation prevents mootness. Pl.'s Opp. at 7-8. This doctrine applies if "the action being challenged by the lawsuit is capable of being repeated and evading review." Al Najjar v. Ashcroft, 273 F.3d 1330, 1336 (11th Cir. 2006) (emphasis omitted). But "when the defendant is . . . a government actor, there is a rebuttable presumption that the objectionable behavior will not recur." Troiano v. Supervisor of Elecs. in Palm Beach Cty., 382 F.3d 1276, 1283 (11th Cir. 2004); see also Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328-29 (11th Cir. 2004). This is especially so where the government has favorably adjusted an applicant's immigration status. Cf. Sze v. INS, 153 F.3d 1005, 1009 (9th Cir. 1998), limited on other grounds, United States v. Hovsepian, 359 F.3d 1144, 1161 (9th Cir. 2004) (en banc) ("Inasmuch as the named plaintiffs have been naturalized, it is highly unlikely that they would ever have to repeat the process.").

AO 72A
(Rev. 8/82)

Plaintiff Lee-Lewis does not rebut the presumption that the USCIS and State Department will not reverse grant of her waiver. Mootness thus bars most of Plaintiffs' claims. See Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (noting that, to avail herself of voluntary cessation, "the same complaining party [must be likely to] be subjected to the same action again.").

**b.    The Court Cannot Review the Waiver Decision under the APA**

Even assuming that Plaintiffs' claims were not moot, judicial review of the State Department's discretionary waiver decision is prohibited. The APA does not extend judicial review to actions committed to agency discretion by law. 5 U.S.C. § 701(a). "[A]n agency action is committed to the agency's discretion . . . when an evaluation of the legislative scheme as well as the practical and policy implications demonstrate that review should not be allowed." Webster v. Bullard, 623 F.2d 1042, 1046 (5th Cir. 1980). Criteria here are:

> (1) the broad discretion given an agency in a particular area of operation, (2) the extent to which the challenged action is the product of political, economic, or managerial choices that are inherently not subject to judicial review, and (3) the extent to which the challenged agency action is based on some special knowledge or expertise.

Am. Fed'n of Gov't Emps., Local 2017 v. Brown, 680 F.2d 722, 726 (11th Cir. 1982) (citing Bullard, 623 F.2d at 1046).

AO 72A
(Rev. 8/82)

Such criteria have been deemed satisfied by J-1 waiver decisions by various federal appellate cases and judgments within this Circuit. The Court follows suit.

### i. Circuit court decisions

Six circuit courts have expressly decided whether the decision to deny a waiver is judicially reviewable. Abdelhamid v. Ilchert, 774 F.2d 1447, 1450-51 (9th Cir. 1985); Dina v. Att'y Gen. of U.S., 793 F.2d 473, 476 (2d Cir. 1986); Chong v. Dir., U.S. Info. Agency, 821 F.2d 171, 176 (3d Cir. 1987); Slyper v. Att'y Gen., 827 F.3d 821, 824 (D.C. Cir. 1987); Singh v. Moyer, 867 F.2d 1035, 1039 (7th Cir. 1989); Korvah v. Brown, 66 F.3d 809, 812 (6th Cir. 1995). Five hold that it is not. See, e.g., Dina, 793 F.2d 476 ("The USIA's statutory authorization contained in 8 U.S.C. § 1182(e) is entirely bereft of any guiding principles by which the USIA's action may subsequently be judged . . . Given the fact that foreign policy concerns are integrally involved in waiver decisions, agency discretion in this area should be broad."); Slyper, 827 F.2d at 823 ("The statute contains no standard or criterion upon which the Director is to base a decision to make or withhold a favorable recommendation. This broad delegation of discretionary authority is 'clear and convincing evidence' of congressional intent to restrict judicial review in cases such as those we now face."); Singh, 867 F.2d at 1039 ("[B]y virtue

AO 72A
(Rev. 8/82)

of the statutory language, the statutory structure, the legislative history, and the nature of the USIA's actions under § 1182(e), Congress has provided 'no meaningful standard' for reviewing the USIA's action, and has 'committed' the USIA's waiver recommendation function' to that agency's discretion.").

Plaintiffs rely on the outlier, Chong. Pl.'s Opp. at 9-13. In Chong, the Third Circuit held that the denial of a J-1 waiver is subject to judicial review for abuse of discretion. Chong, 821 F.2d at 175-80. But even it recognized many constraints:

> [O]ur scope of review of the USIA's recommendation function under section 1182(e) is severely limited because the statute and the USIA's regulations vest rather broad discretion in the Director . . . . The extent of our review . . . is limited to whether the USIA followed its own guidelines.

Id. at 176 (emphasis added).

Chong upheld the waiver denial at issue, because even though USIA's letter was "not very specific, it [did] indicate that the USIA 'review[ed] the policy, program, and foreign relations aspects of the case.'" Id. at 177. Chong emphasized that the J-1 visa program is designed to "strengthen international cooperative relations" by providing for educational exchanges. 821 F.2d at 177 (quoting 22 U.S.C. § 2452(a)(1)). It was not structured to provide an easy pathway for entry.

_Chong_ also accepted the government's strict waiver policy, deciding that Congress clearly "intended that waivers not be granted leniently." 821 F.2d at 179.

### ii. Fifth and Eleventh Circuit authority

This review-averse attitude is supported by cases from the Eleventh and Fifth Circuits. _See, e.g._, _Nwankpa v. Kissinger_, 376 F. Supp. 122, 125 (M.D. Ala. 1974), _aff'd_, 506 F.2d 1054 (5th Cir. 1975); _Al-Khayyal v. U.S. Immig. & Naturalization Serv._, 818 F.2d 827, 830-32 (11th Cir. 1987). In _Nwankpa_, a J-1 waiver case, a sister district court held that Congress "wisely gave limited power for judicial review of the discretionary functions of the Attorney General and the Secretary of State, and this [type of] case does not . . . fall within" the APA's allowance of judicial review. 376 F. Supp. at 125.

Similarly, in _Al-Khayyal_, appellant challenged the denial of his J-1 waiver. 818 F.2d at 828. The Eleventh Circuit noted that "legislative history . . . strongly supports stringent enforcement of the two-year home country residence requirement." _Id._ at 831. It also remarked that, "in light of the broad discretion given the agency in granting a waiver, the [district] court was unable to find that the INS's decision in Al-Khayyal's case varied so significantly from earlier decisions as to constitute an abuse of that discretion." _Id._ at 830.

AO 72A
(Rev. 8/82)

### iii. Application

At the very most, Al-Khayyal hinted that waivers could be reviewed for abuse of discretion. Regardless of whether the Court took such a look or followed the majority approach, its decision would be the same. The facts of this case are simply too similar to those of Al-Khayyal and Chong to find abuse of discretion. See Al-Khayyal, 818 F.2d at 830 (declining to find abuse of discretion given factual similarities to precedent). In Al-Khayyal, the appellant knew of the residency requirement when he first applied for his J-1 visa—this meant that the facts that he did not "pay sufficient attention" and "made long terms plans to stay" did not support review. 818 F.2d at 832. Here, Plaintiff Lee-Lewis clearly knew that she faced a residency requirement because she returned to Montserrat immediately upon graduation in 1992. 2d Am. Compl. ¶ 25. That she lost track of her obligation and built a life in this country is no excuse.

The denial letters in Chong and this case are very similar. If anything, the one here is more detailed. Compare Chong, 821 F.2d at 177 ("It is not felt the hardship outweighs the intent of Public Law 94-84.") with 2d Am. Compl. ¶ 93 ("The United States Department of State has advised that even though a 'no objection' statement from your country of nationality has been issued, based on program and policy considerations they are not recommending that you be granted a waiver of the two-year

AO 72A
(Rev. 8/82)

foreign residence requirement of section 212(e) of the Immigration and Nationality Act, as amended . . . .").  This case fits squarely within the parameters set by precedent.

Even looking beyond factual similarities with other cases, Defendants did not abuse their discretion.  None of the statutory criteria for evaluating a no objection waiver direct an agency to consider whether physical circumstances outside of the alien's control prevent return, or health risks.  See 22 C.F.R. § 41.63(d)(2).  Defendants could not be ordered to analyze Plaintiff Lee-Lewis's application more favorably than they did.  Plaintiffs' APA claim fails.

### c. Most of the Other Declaratory Judgment Claims Fail

Plaintiffs request that the Court issue declaratory judgments excusing Plaintiff Lee-Lewis's failure to properly waive the residency requirement.  Most of her requests fail to state a claim upon which the Court can grant relief, and she lacks standing to bring others.

Plaintiff Lee-Lewis argues that her claim should be subject to a more relaxed standard of review because she imparted her cultural heritage in the United States.  2d Am. Compl. ¶ 132. Sharing "cultural heritage" is not germane to a residency requirement waiver.  See 22 C.F.R. § 41.63(d)(2).  Besides, the J-1 visa program is meant to "strengthen international ties."

AO 72A
(Rev. 8/82)

Such ties are not strengthened when a visitor remains in the United States without imparting knowledge in her home country.

Plaintiff Lee-Lewis next asserts a constitutional property right to her application fee and a constitutional life interest against death or health problems. 2d Am. Compl. ¶¶ 129-130. But aliens simply do not have a due process right to discretionary immigration relief. Alhuay v. U.S. Att'y Gen., 661 F.3d 534, 548-49 (11th Cir. 2011) (citing Scheerer v. U.S. Att'y Gen., 513 F.3d 1244, 1253 (11th Cir. 2008)).

Third, Plaintiff Lee-Lewis requests that the Court declare that the USCIS and the State Department erred by changing her status from F-1 to H-1B on July 1, 1998. 2d Am. Compl. ¶ 142. Plaintiff cites to Matter of Kim, 131 I. & N. Dec. (BIA) 316, 1968 WL 14064, *317 (1968), arguing that but for this supposed error, she would have found her J-1 problem. Id. ¶ 28. But Matter of Kim itself discounts the significance of an alien having had multiple types of visas. It held that an "alien who came to the United States as the beneficiary of an exchange visitor program should be held to the requirements of the program notwithstanding that he may have incidentally and temporarily had the classification of a foreign government employee." I. & N., at *318 (emphasis added). It is thus immaterial that lawyers, employers, and even the government mis-

AO 72A
(Rev. 8/82)

categorized Plaintiff Lee-Lewis—she knew of the residency requirement and did not properly avoid it. 2d Am. Compl. ¶ 143.

Fourth, Plaintiff Lee-Lewis seeks nunc pro tunc relief (that is, retroactive adjustment of her immigration status), relying on: (1) Defendants' "pattern and practice of denying nearly all U.S. Government-funded no objection waiver applications," 2d Am. Compl. ¶ 128; (2) the state of the law regarding judicial review of waiver decisions, id. ¶¶ 144-45; and (3) Defendants' failure to respond to Plaintiffs' FOIA request, id. ¶¶ 146, 148.

Nunc pro tunc relief in the immigration context must be based on government error. See Edwards v. INS, 393 F.3d 299, 308-09 (2d Cir. 2004). The state of American law is not "error." Chen v. U.S. Att'y Gen., 439 F. App'x 874, 876 (11th Cir. 2011) (per curiam) (unpublished opinion). Nor is a discretionary decision, like those made regarding waiver applications. See, e.g., Zhang v. Holder, 617 F.3d 650, 667 (2d Cir. 2010).

Considering Defendants' FOIA error, the Court agrees that there was one, as discussed below. But to award nunc pro tunc relief on this basis, the Court would have to hold that Plaintiff Lee-Lewis would have been entitled to a waiver had she been armed with the information she requested. The Court has already held that Defendants were within their very broad

AO 72A
(Rev. 8/82)

authority to deny the waiver. The Court cannot imagine any document Plaintiffs would have received from Defendants that would have shown denial to be the first abuse of discretion known to the U.S. court system. Plaintiff Lee-Lewis has thus failed to state a claim for nunc pro tunc relief.[4]

Fifth, Plaintiffs seek declarations relating to an alleged pattern or practice of improprieties in considering waiver applications. 2d Am. Compl. ¶¶ 82, 127-29, 151, 157. Many of these only raise pattern or practice by way of criticizing the initial decision not to grant Plaintiff Lee-Lewis a waiver, and so they are plainly moot. Id. ¶¶ 128-29, 151, 157.

One relates to Plaintiffs' FOIA claim; it is addressed below and will not be dismissed. Id. ¶ 82.

The rest stand free. Because this case was not brought by a class, and Plaintiffs no longer suffer injury from any pattern or practice Defendants have, these claims must be dismissed for want of standing. See City of Houston v. Dep't of Hous. & Urban Dev., 24 F.3d 1421, 1430 (D.C. Cir. 1994) ("[I]f a plaintiff challenges an ongoing agency policy by seeking declaratory relief, but lacks standing to attack future applications of that policy, then the mooting of the plaintiff's specific claim obviously leaves the court unable to award relief.").

---

[4] Defendants' response could conceivably yield some document showing denial of her waiver to be the as-yet-unencountered abuse of discretion. Therefore, Plaintiffs' nunc pro tunc claim is only **DISMISSED WITHOUT PREJUDICE**.

AO 72A
(Rev. 8/82)

The Court cannot grant most of Plaintiffs' sought declaratory relief.

### d. FOIA

Plaintiffs seek declaratory and statutory relief because the State Department failed to timely respond to their FOIA request. 2d Am. Compl. ¶¶ 147-148, 178-83. These claims survive dismissal.

Plaintiffs argue that the State Department failed to respond to Plaintiff Lee-Lewis's May 8, 2013 FOIA request. 2d Am. Compl., ¶¶ 147-148. Defendants argue that Plaintiffs failed to exhaust administrative remedies. Def.'s Mot., ¶ 13. In light of Defendants' reliance on matters going beyond the pleadings, the Court treats their attack on subject matter jurisdiction as factual. See Dkt. No. 32 at 12-15. The Court thus considers "the complaint supplemented by undisputed facts." Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).

The Complaint alleges enough facts to establish jurisdiction. It alleges that "[t]he Defendants have failed to respond to the Plaintiffs's [sic] request" beyond issuing a receipt acknowledgment letter. 2d Am. Compl. ¶ 180; see also id. ¶ 113. "If [an] agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." Citizens for Responsibility & Ethics in Wash. v.

AO 72A
(Rev. 8/82)

FEC, 711 F.3d 180, 189 (D.C. Cir. 2013). The State Department's 40-month delay is far beyond FOIA's deadlines. See id. Thus, Defendants' exhaustion argument is no shield.

The undisputed facts do not defeat Plaintiffs' facially valid allegation. The receipt acknowledgment letter indicates only that the State Department "[would] begin the processing of [Plaintiff Lee-Lewis's] request" and "[would] notify [her] as soon as responsive material has been retrieved and reviewed." Dkt. No. 27-1 at 17.

Defendants respond that another, later letter establishes that Plaintiff Lee-Lewis failed to perfect her request by "fail[ing] to respond to [the State Department's] requests for clarification or acceptance of the estimated costs." Dkt. No. 32 at 14-15. That letter was not sent until December 2013, nearly seven months after the request. Dkt. No. 27-1 at 20. It says that "[the State Department has] attempted to contact [Plaintiff] by telephone numerous times to discuss her request but [has] been unable to reach her. . . . We anticipate the fees will be much higher [than Plaintiff agreed to pay] and would like to discuss the request with her before proceeding with it." Id.

This does not prove failure to perfect. The government could have called Plaintiff Lee-Lewis for the first time after its response deadline had elapsed, in which case it would not be

able to rely on failure to exhaust administrative remedies. See Tereshchuk v. Bureau of Prisons, 851 F. Supp. 2d 157, 161 (D.D.C. 2012) ("A belated fee letter does not restart the exhaustion clock . . . .").

The Court will not attempt to resolve the factual dispute at this stage. Subject matter jurisdiction will instead be revisited should additional evidence persuade the Court that Plaintiff indeed failed to exhaust administrative remedies by refusing to pay properly requested fees. See, e.g., Cunningham v. Holder, 842 F. Supp. 2d 338, 346 (D.D.C. 2012). For the time being, though, Defendants' motion to dismiss Plaintiffs' FOIA claims is **DENIED**.

## CONCLUSION

As Chong said, Plaintiff "made a bargain with the United States." 821 F.2d at 179. It may be fourteen years later—and lawyers, employers, government agencies, and even Plaintiff herself, may have overlooked Plaintiff's residency requirement— but she must now uphold her end. However, American fair-dealing also requires the State Department to uphold its FOIA duties.

For the reasons set forth above, it is hereby **ORDERED** that:

(1) Defendants' Motion to Dismiss (Dkt. No. 32) is **GRANTED IN PART**, as to all claims other than those specifically exempted below;

AO 72A
(Rev. 8/82)

(2) Plaintiffs' nunc pro tunc claim is **DISMISSED WITHOUT PREJUDICE**;

(3) Defendants' Motion to Dismiss (Dkt. No. 32) is **DENIED IN PART**, as to Plaintiffs' international law, ICCPR, and FOIA claims;

(3) Plaintiffs' Motion to Strike (Dkt. No. 40) is **DENIED IN PART**, in that the Court considers Defendants' reply brief;

(4) Plaintiffs' Motion to Strike (Dkt. No. 40) is **GRANTED IN PART**, in that the Court allows Plaintiffs' Sur-reply;

(5) Plaintiffs' Motion for a Thirty Minute Telephone Hearing to Present Oral Arguments is **DENIED**; and

(6) Defendants have **SIXTY DAYS** from the date of this Order to respond to Counts 6-7 of Plaintiffs' Second Amended Complaint.

**SO ORDERED**, this 8th day of November, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)